UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                                          Case No.: 17-11935-7

MARYAM ELISHEBA MUHAMMAD
and TERRY D. BRIGGS,

　　　　　Debtors.

---

### MEMORANDUM DECISION

　　Debtors Maryam Muhammad ("Muhammad") and Terry Briggs (collectively "Debtors") filed this chapter 7 petition on May 29, 2017. They received a discharge on November 28, 2017.

　　From 2012 to 2014, Muhammad participated in the FoodShare program provided by the state of Wisconsin. Though the parties do not explicitly address her application for benefits, she apparently applied for the FoodShare program to support herself and her grandchild. In 2014, the state sent notices to Muhammad indicating she had received an overpayment of benefits through the program. The notices asserted she provided inaccurate income and housing information to the Wisconsin Department of Children and Families ("DCF") resulting in overpayment in the amount of $5,520.92. The notices also described an appeals process in which she could have requested a hearing on the matter.

　　Muhammad did not request a hearing and did not pay the debt. She received a discharge on November 28, 2017. In March of 2018, DCF intercepted Debtors' tax refund to satisfy part of the overpayment. Debtors assert the

amount of the refund was $3,436.00, while DCF says the amount was $3,402.50. Muhammad then brought this Motion for Contempt against DCF to recover the tax intercept (the "Motion"). Debtor alleges the overpayment debt was discharged in her chapter 7. The Motion asks the Court to hold DCF in contempt for violation of the discharge injunction, to compel return of the tax refund, for costs and attorneys' fees, and for punitive damages. DCF responds that the overpayments were in the nature of a domestic support obligation and thus were not discharged.

## DISCUSSION

There is a split of authority on whether overpayments for government benefits are "domestic support." While some cases hold programs such as FoodShare benefits are nondischargeable when incurred to support children, that is not the end of the inquiry. The lynchpin is whether the overpayment in this case meets all of the requirements of 11 U.S.C. § 523(a)(5) because the overpayment went toward supporting Muhammad's grandchild.

1. *When is a debt "in the nature of support"?*

Under section 523(a)(5), a debt "for a domestic support obligation" is nondischargeable. The Code defines "domestic support obligation" as a debt that is:

    (A)    owed to or recoverable by—

        . . .

        (ii)    a governmental unit;

    (B)    in the nature of . . . support (including assistance provided by a governmental unit) of such spouse, former spouse, or

2

        child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

  (C)    established . . . before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

        . . .

      (iii)    a determination made in accordance with applicable nonbankruptcy law by a governmental unit, and

  (D)    not assigned to a nongovernmental entity.

11 U.S.C. § 101(14A).

The overpayment satisfies three prongs of the definition for a domestic support obligation: it is owed to a governmental unit, it was established under nonbankruptcy law by a governmental unit, and it is not assigned to a nongovernmental entity. That leaves the question of whether the overpayment obligation is "in the nature of support" under section 101.

A number of courts have addressed whether debt for overpayment of benefits by the government constitutes a domestic support obligation. In *Wis. Dep't of Workforce Dev. v. Ratliff*, the Eastern District encountered a nearly identical fact pattern, except the benefits went toward supporting debtor's children. 390 B.R. 607 (E.D. Wis. 2008). There, debtor claimed the overpayment was not support under section 101 because it exceeded what she needed to support her family. The court rejected debtor's argument and concluded the overpayment qualified as support because it was "allocated to [debtor] for the support of her children . . . based on her income and reported household size." *Id.* at 616. In reaching its conclusion, that court did not rely

3

on the debt's nexus to debtor's duty of familial support. *See* 2 *Collier on Bankruptcy* ¶ 101.14A. Rather, it "held that because the debt provided support for the debtor's spouse and children, was owed to a governmental unit, and had been determined owing by a governmental unit, it was a domestic support obligation." *Id*. In other words, that court did not restrict the term "governmental unit" to one traditionally involved in providing food stamps or other family support.

In a similar case, a court in the Northern District of Illinois reached the opposite conclusion. In *Halbert v. Dimas (In re Halbert)*, the debtor received overpayment of food stamp benefits and argued the debt was for the return of funds that should not have been paid in the first place. 576 B.R. 586 (Bankr. N.D. Ill. 2017). Because the debt at issue was owed to the government, she argued payment of it did not benefit her or her children. Therefore, it was not "support" as contemplated in the statute. The court agreed with the debtor and ruled the overpayment debt "is merely a debt to the government for the return of benefits that should never have been paid." *Id*. at 598. In reaching its conclusion, the court noted "virtually any incorrect payment by the government to a household is in most cases used to provide support to the household." *Id*. at 595, *quoting* 2 *Collier on Bankruptcy* ¶ 101.14A.

Meanwhile, the Ninth Circuit has taken a more moderate approach. In *Rivera v. Orange Cnty. Prob. Dep't*, the court addressed a situation where the County Probation Department held a claim for the costs of support of a minor. 832 F.3d 1103 (9th Cir. 2016). California law required parents of juvenile

4

detainees to pay for the basic living expenses of their children while they were detained. Debtor's son had been in juvenile detention and she received a bill for his costs upon his release. The court remarked the definition of support in section 101 was drafted to avoid "[hindering] the enforcement of family obligations in circumstances in which the government's family support infrastructure—the network of foster systems, aid agencies, family courts, and the like—has intervened on a . . . child's behalf." *Id.* at 1107. Because the Probation Department is not part of a "family support infrastructure," the court determined the debt was not support under section 101, even though it technically went toward the costs of supporting a child. *Id.*

Lending support to the *Rivera* approach, Collier's suggests it more closely reflects the intent of Congress. It instructs:

> An interpretation more faithful to the purpose of the domestic support obligation definition would require (1) that the debt have a nexus to failure to meet the debtor's familial support obligations and (2) that the determination by a governmental unit be one made by a governmental unit that carries out the functions of determining family support.

2 *Collier on Bankruptcy* ¶ 101.14A.

Of the three approaches, the approach taken by the Ninth Circuit most closely tracks the intent and language of the Code. Under *Ratliff*, arguably any overpayment from the government would be termed domestic support. If, for instance, a debtor received an incorrect tax refund and then bought groceries for her child, the refund would be domestic support and therefore nondischargeable. That result would be particularly harsh on low income

5

debtors because it imposes a nondischargeable debt even though the debtor did nothing to affirmatively create the debt. Rather, the nondischargeable obligation would be created solely through the mistake of the government. Such a result seems fundamentally unfair to debtors who may not realize they received an overpayment and spend every dollar, including their annual tax refunds, toward supporting their households. The intent of section 101 is to "include debts to governmental units arising from a statutory duty to support dependents," not to impose a nondischargeable albatross on unsuspecting taxpayers. 2 *Collier on Bankruptcy* ¶ 101.14A.

On the other hand, the ruling in *Halbert* arguably opens the door to encouraging dishonesty and mishandling of government resources. The Debtors here and in *Halbert* misrepresented their personal information when seeking government assistance. Regardless of whether that misrepresentation was intentional, the Debtors received benefits to which they were not entitled. Hypothetically under *Halbert*, debtors could flagrantly misrepresent their information on their applications for assistance, receive inflated benefits, then discharge the resulting debt. That result also seems fundamentally unfair to the government and to people who are honest in their applications for assistance. The pool of government resources allocated to assistance for low income individuals is limited. DCF has formulated a procedure to ensure those resources are allocated to people who need them most. If a debtor receives ill-gotten benefits and does not pay them back, then government resources are

6

effectively diverted away from honest people who are genuinely and most desperately in need of help.

In addition, the *Halbert* approach is open to attack for several other reasons. First, it arguably encourages a lack of care when submitting information to assistance programs. It would be difficult for the government to verify the income and housing information of every individual who applies for assistance. And, in any case, the applicant is in the best position to know his or her personal information. If an obligation resulting from benefit overpayments is not domestic support and therefore is dischargeable, then there is little consequence for debtors in bankruptcy who fail to accurately represent their information.

Second, it renders section 101(14A)(A) meaningless. Section 101 expressly includes debts "owed to or recoverable by" governmental units. To reiterate, *Halbert* held the debt was not "support" because its payment benefitted the government, not debtor's family. 576 B.R. at 598. If that was the intent of Congress, the inclusion of "governmental unit" in section 101 would be entirely unnecessary. No debt owed to or recoverable by the government would directly benefit a family—by definition it directly benefits only the government. When interpreting a statute, the Court must "begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (*quoting Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)). It appears Congress meant exactly what it said in

Section 101(14A): debts for support *owed to or recoverable by the government* are nondischargeable.

Meanwhile, the Ninth Circuit approach strikes a reasonable balance between the *Ratliff* and *Halbert* extremes. On the one hand, it better reflects the language in the Code, which "undoubtedly . . . [includes] debts to governmental units arising from a statutory duty to support dependents." 2 *Collier on Bankruptcy* ¶ 101.14A. Because that test requires some relationship to a "government's family support infrastructure," it would not permit the government to impose a nondischargeable debt irrespective of its original character. *Id.* The *Rivera* approach requires the debt have at least some relationship to a government agency involved in the welfare of families.

On the other hand, *Rivera* also avoids the pitfalls of *Halbert* because it preserves the language in the Code and encourages honesty and precision when filling out applications for benefits.

*2. Does Debtor's grandson qualify under section 101?*

Section 101 enumerates the entities for whom support may be applied: namely, spouses and children. The statute does not include grandchildren. At least three other courts have addressed whether debt for support of a grandchild is dischargeable. Two of those cases held grandchildren generally do not fall under the section 101 definition and therefore debts for their "support" are dischargeable. *See Raridon v. Carlson (In re Carlson),* 545 B.R. 229 (Bankr. N.D. Ill. 2016); *Eliason v. Sullivan (In re Sullivan),* 234 B.R. 244 (Bankr. D. Conn. 1999). In reaching that conclusion, those courts looked to state law and

8

the legislative history of section 523(a)(5). They noted that "[a]t common law, a father is bound to support his legitimate children . . . . We think it was not the intention of Congress . . . to provide for the release of the father from his obligation to support his children by his discharge in bankruptcy." *Dunbar v. Dunbar*, 190 U.S. 340, 351 (1903). Virtually every state has some law establishing parents' obligation to financially provide for their children. *Id.* The rationale behind making domestic support obligations nondischargeable, they argued, does not apply to grandparents who are not statutorily required to support their grandchildren. *See Carlson*, 545 B.R. at 236; *Sullivan*, 234 B.R. at 246.

The third case followed the same reasoning, though it ultimately held grandchildren could qualify as children in very narrow circumstances. *Epstein v. Defilippi (In re Defilippi)*, 430 B.R. 1, 4 (Bankr. D. Me. 2010). A state court had ordered debtors to take over the rights and responsibilities of parenthood for their grandchildren. In those circumstances, Maine law designated debtors as *de facto* parents and they were therefore legally required to financially support the grandchildren. In essence, the grandparents had stepped into the shoes of the parents and debt for the support of the children was therefore nondischargeable.

The Code does not define the term "child" or "child of the debtor." Without a definition, a term contained in a statute is given its "ordinary meaning." *Clark v. Rameker*, 134 S. Ct. 2242, 2246 (2014). A child is generally considered an "unemancipated person under the age of majority." *Black's Law*

9

*Dictionary* (10th ed. 2014). While that definition is broad enough to encompass a grandchild, the definition of domestic support in the Code specifically applies to a "child *of the debtor*." The specificity of the language in section 101 suggests it applies only to a debtor's immediate children. Moreover, in other contexts, "the word 'children' is normally used to denote issue of the first generation only." *Restatement of Property* § 267, cmt. c (1940). And in any case, Congress was undoubtedly aware of the difference between children and grandchildren when it drafted the Code. If it intended to include grandchildren and other dependents under section 523(a)(5), then it could have done so.

Applying those principles to this case, the DCF debt was dischargeable. There is no evidence a state court has issued an order that designates Muhammad as a *de facto* parent to her grandchild. Although DCF repeatedly refers to the child as Debtor's "child," not grandchild, that is contrary to the facts. Debtors' schedules clearly reference only one "grandchild." It appears the grandchild is the only minor child at issue.

Under Wisconsin law, grandparents bear the responsibility to financially support their grandchildren in very limited circumstances. If, for instance, the parent is under 18, then the grandparents must "maintain" the child to the extent the parent is not able. Wis. Stat. § 49.90(1)(a)(1). There is nothing in the record that suggests Muhammad has a legal responsibility to financially support her grandchild. Thus, the DCF debt does not fall under section 523(a)(5) because it was not incurred to support "[the] . . . child of the debtor." The policy reasons behind section 523(a)(5)—namely to impose non-

10

dischargeable debt on parents for their legal obligation to financially support their children—do not apply to this case.

DCF acknowledges intercepting Muhammad's refund, but says it should not be penalized because it takes the position the debt was a support obligation. However, not knowing the setoff was a violation does not excuse an intentional violation of the discharge injunction. *Hardy v. United States*, 97 F.3d 1384, 1390 (11th Cir. 1996). DCF received notice of the commencement of the case and of Muhammad's discharge. The interception of her refund was intentional even if it was not a deliberate decision to violate the discharge injunction. *Id.*

The overpayment was not a domestic support obligation. Thus, the DCF intercept did violate the discharge injunction.

*3. Debtor's Request for Damages*

Muhammad has requested a finding of contempt, return of the funds, costs and attorneys' fees, and punitive damages. The Court can grant some but not all the relief requested.

Muhammad demands return of the tax refund taken by DCF in payment toward a discharged overpayment. This Court has the authority to consider and grant such relief. The request that the Court find DCF violated the discharge injunction and to enter an order that DCF cease collection activities and return funds is not a claim for damages. Rather, it is simply a request for enforcement of the existing injunction. Because the Court has determined that

DCF had no right to take Muhammad's refund, the money taken from her must be returned and further collection efforts must stop.

The discharge is a fundamental feature of bankruptcy by which the states are bound. *Cent. Va. Cmty. College v. Katz*, 546 U.S. 356, 364 (2006); *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004). Injunctive relief, damages, and attorneys' fees are ancillary to the proceeding because those remedies serve as mechanisms for enforcement of the discharge. *See Slayton v. White (In re Slayton)*, 409 B.R. 897, 903 (Bankr. N.D. Ill. 2009).

Section 106(a) expressly subjects government units to the discharge injunction. Under section 106(a)(1), a governmental unit (defined in section 101(27) to include a "State" and an "instrumentality of . . . a State," 11 U.S.C. § 101(27)) has no immunity with respect to section "524 . . . of this title"—the section imposing the discharge injunction. 11 U.S.C. § 106(a)(1). Under section 106(a)(3), the court "may issue against a governmental unit an order, process, or judgment" under section 524, "including an order or judgment awarding a money recovery, but not including an award of punitive damages." 11 U.S.C. § 106(a)(3).

The request for costs and attorneys' fees must be denied. Counsel does not represent Muhammad. She is representing herself. She has not incurred any costs or attorneys' fees relating to the filing of the Motion. Under section 106(a)(3), DCF is immune from a claim of punitive damages, so that relief must also be denied.

## CONCLUSION

The DCF overpayment is not a domestic support obligation under section 523(a)(5) because it was not incurred on behalf of Muhammad's child. The overpayment was discharged. DCF has violated the discharge injunction by setting off a tax refund against a discharged debt. DCF must immediately release and refund to Muhammad the amount of $3,436.00.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: June 1, 2018

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge